UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL HOWARD, Plaintiff, v. MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | Case No. EDCV 10-914-OP<br><br>MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the three disputed issues listed in the Joint Stipulation ("JS").[2]

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before United States Magistrate Judge Oswald Parada in the instant action. (See Dkt. Nos. 9, 10.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.

# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ properly considered the opinions of Plaintiff's worker's compensation examiner;
2. Whether the ALJ properly considered the treating psychiatrist's opinions; and
3. Whether the ALJ properly developed the record.

(JS at 2-3.)

# II.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

# III.

# DISCUSSION

## A. The ALJ's Findings.

The ALJ found that Plaintiff has the severe impairments of obesity, degenerative disc disease, rotator cuff tendinitis, and degenerative arthritis. (Administrative Record ("AR") at 20.) He also found that Plaintiff has the residual functional capacity to perform medium work, with the following limitations: Plaintiff is able to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; she can sit, stand, and/or walk for six hours in an eight-hour work day; she could frequently climb ladders and scaffolds; she could frequently stoop, crouch, or crawl; she would have mild limitations in understanding and remembering complex instructions and details; she would have mild limitations interacting appropriately with supervisors, coworkers, and the public; and she would have mild limitations responding appropriately to usual work situations and to changes in work settings. (Id. at 22.)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing her past relevant work as a certified medical assistant, a forklift operator, a warehouse worker, and a home health aide. (Id. at 27.)

## B. The ALJ Failed to Properly Considered the Opinions of the Worker's Compensation Examiner.

Included in the record before the ALJ was a March 20, 2006, Agreed Medical Evaluation of Plaintiff completed by Jeffrey A. Berman, M.D., in relation to Plaintiff's previous worker's compensation claim. (AR at 578-615.) The report is extensive and includes a thorough review of Plaintiff's past medical records as well as Dr. Berman's findings from a physical examination of Plaintiff. Dr. Berman noted that an MRI of Plaintiff's left shoulder revealed mild supraspinatus tendinitis without a definitive rotator cuff tear, and an MRI

of Plaintiff's lumbar spine was "potentially significant with a 4.5 mm posterior and right protrusion at L4-5 and a central 5 mm protrusion at L5-S1." (Id. at 608.) Ultimately, Dr. Berman reported limited cervical and lumbar mobility, lower back pain elicited from all planes of motion, and complaints along the posterior aspect of the lower extremities upon sitting straight leg raises. (Id. at 581-82, 610.) Plaintiff exhibited left calf atrophy. (Id. at 610.) Dr. Berman also reported shoulder pain on all planes of motion and complaints on left shoulder impingement testing, but good strength of the rotator cuff. (Id. at 582-83, 609-10.) Dr. Berman concluded that Plaintiff suffered from a sprained/strained left shoulder with impingement syndrome, chronic recurrent musculoligamentous strain of the lumbosacral spine, lower extremity radicular involvement, discogenic pathology per MRI, and cervicotrapezial musculoligamentous strain. (Id. at 607.) Dr. Berman recommended that Plaintiff "avoid heavy lifting and overhead activities with repetitive activities above the shoulder" and "avoid heavy work activities, along with prolonged weight bearing and prolonged sitting." (Id. at 610.)

In denying Plaintiff's application, the ALJ discussed Dr. Berman's opinions as follows:

> I have read and considered the medical report, dated March 20, 2006, by workers' compensation physician Jeffrey A. Berman, M.D. and give him less weight. Dr. Berman reported the claimant injured herself at work on March 24, 2005 when she went to pick up a patient who fell, and felt lower back and left shoulder pain. He reported the claimant had limited mobility of the lumb[a]r spine and pain complaints in the left shoulder, but she had good strength to rotation cuff testing was overall normal for the rest of the physical examination [sic]. He opined the claimant avoid overhead and repetitive heavy work activities.

(Id. at 23 (footnote omitted) (citations omitted).) The ALJ next discussed the findings of Hampton Gaskins, M.D., Plaintiff's treating physician with respect to her worker's compensation case. (Id. at 23-24.) The ALJ then concluded as follows:

> Medical reports generated within the context of a workers' compensation claim are adversarial in nature–*ie*, those reports submitted on behalf of the employee tend to maximize the nature and extent of the injury and resultant limitations, while the reports submitted on behalf of the employer tend to emphasize just the opposite. Further, disability statements in regard to a workers' compensation case are not relative to Social Security Disability and are rejected based on 20 CFR 404.1527(e) and 416.927(e), which allow outright rejection of conclusions of disability which are based on criteria other than Social Security Regulations. In addition, these statements are reserved to the Commissioner.

(Id. at 24.)[3]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

---

[3] Plaintiff also contends that the ALJ's statements that "the treating source opinions are inconsistent with the other medical opinions contained in the record" and "the treating source opinions are not consistent with the other substantial evidence in the record," were further attempts by the ALJ to provide reasons for the rejection of Dr. Berman's opinions. (AR at 25.) However, because these statements come nearly two pages after the discussion of the worker's compensation physicians, and because Dr. Berman was merely an examining physician and not a treating physician, the Court does not find that the rejection of the treating source opinions is germane to the ALJ's rejection of Dr. Berman's findings.

claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33; Social Security Ruling 96-2p. Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990)). Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

The ALJ offered two potential reasons for rejecting Dr. Berman's opinions, that Dr. Berman's findings were "overall normal" and Dr. Berman's opinions arose from a worker's compensation case. As explained below, neither of these reasons are specific and legitimate.

First, the ALJ concluded that, other than limited lumbar mobility and left shoulder complaints, Dr. Berman's physical examination of Plaintiff rendered "overall normal" results, particularly with respect to Plaintiff's rotator cuff strength. (AR at 23.) Although Dr. Berman found that Plaintiff's rotator cuff strength was good, as explained above, Dr. Berman's remaining findings were not "overall normal." Dr. Berman noted MRI results revealing mild

supraspinatus tendinitis of the left shoulder and lumbar spine findings were "potentially significant with a 4.5 mm posterior and right protrusion at L4-5 and a central 5 mm protrusion at L5-S1." (Id. at 608.) Dr. Berman also reported limited mobility of both the lumbar and cervical spine, lower back pain, pain of the lower extremities, left calf atrophy, shoulder pain and impingement. (Id. at 581-83, 609-10.) Ultimately, Dr. Berman concluded that Plaintiff suffered from a sprained/strained left shoulder with impingement syndrome, chronic recurrent musculoligamentous strain of the lumbosacral spine, lower extremity radicular involvement, discogenic pathology per MRI, and cervicotrapezial musculoligamentous strain. (Id. at 607.)

The ALJ disregarded nearly all of these findings and focused instead on the benign findings with respect to Plaintiff's rotator cuff strength. The ALJ erred in selectively considering the medical evidence from Dr. Berman and thus the conclusion that Dr. Berman's findings were "overall normal" is not a specific and legitimate reason for rejecting the doctor's opinions. Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); Gallant, 753 F.2d at 1456 ("Although it is within the power of the [ALJ] to make findings concerning the credibility of a witness and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (citations omitted).

Neither did the ALJ's discussion of the nature of worker's compensation claims provide a specific and legitimate reason for rejecting Dr. Berman's opinions. "[T]he ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding."

Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citing Coria v. Heckler, 750 F.2d 245, 247-48 (3rd Cir. 1984)); see also Lester, 81 F.3d at 832 (9th Cir. 1995) ("[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them"). Instead, "the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim." Coria, 750 F.2d at 247. While it may be true the that ALJ need not accept the opinions of a worker's compensation doctor on the ultimate determination of disability, see 20 CFR 404.1527(e) (final responsibility for deciding the issue of disability is reserved to the Commissioner and "[a] statement by a medical source that [a plaintiff is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the plaintiff is] disabled"); see also 20 CFR 416.927(e) (same), the ALJ went much further and disregarded the opinions of Dr. Berman as a whole due to the fact that they arose from a worker's compensation case. The Court finds that this was error.

The ALJ's failure to provide specific and legitimate reasons for discounting Dr. Berman's opinions warrants remand. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must provide "detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson v. Barnhart, No. C 00-2986 MMC, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians' evidence.'") (quoting Embrey, 849 F.2d at 422). Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for

rejecting the opinions of Dr. Berman, if the ALJ again determines rejection is warranted.[4]

**C. <u>The ALJ's Consideration of the Opinions of the Treating Psychiatrist</u>.**

The record contains reports from Plaintiff's treating psychiatrist, Gurmeet S. Multani, M.D. Dr. Multani diagnosed Plaintiff with major depressive disorder, moderate, and monitored a regimen of prescription anti-depressants. (AR at 616-29, 666-81.) In a March 4, 2009, Evaluation for Mental Disorders, Dr. Multani concluded that Plaintiff "is unable to carry out tasks and work on goals and issues" and "should not be able to go for training for work or apprenticeship for eight hours a day." (Id. at 678.) In a March 9, 2009, Psychiatric/Psychological Impairment Questionnaire, Dr. Multani indicated that Plaintiff is markedly limited in her ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, work in coordination with or close proximity to others without being distracted by them, complete a normal workweek without interruptions from psychological symptoms, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers, respond appropriately to changes in the work setting, and set realistic goals or make plans independently. (Id. at 670-72.) In addition, Dr. Multani found that Plaintiff was moderately limited in her ability to understand and remember one or two step instructions, carry out simple one or two step instructions, sustain an ordinary routine without supervision, make simple work related decisions,

---

[4] The Court expresses no view on the merits.

ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, and travel to unfamiliar places or use public transportation. (Id.) According to Dr. Multani, Plaintiff was mildly limited in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Id. at 671.)

The ALJ rejected the findings of Dr. Multani, as follows:

> I have also read and considered the Psychiatric/ Psychological Impairment Questionnaire completed by Dr. Multani on March 9, 2009. This checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions. I find this questionnaire has no probative value because it is not supported by any objective evidence. Further, there is no evidence indicating Dr. Multani conducted a malingering-sensitive memory test; he accepted the claimant's history, complaints, and subjective symptoms at face value.
>
> Dr. Multani gave the claimant Global Assessment of Functioning ("GAF") scores of 40 or 45. I find the GAF scores in the claimant's record are of limited evidentiary value. These subjectively assessed scores reveal only snapshots of impaired and improved behavior. I give more weight to the objective details and chronology of the record, which more accurately describe the claimant's impairments and limitations.
>
> My review of the treating source medical records, specifically from Dr. Symonett, Dr. Yang, and Dr. Multani, reveals that the statements made and symptoms reported by the claimant appear to have been accepted at face value. There is nothing in the treatment records to suggest, for example, that any validity testing was

> performed. In addition, there is nothing in the medical treatment records to suggest that any treating source considered whether the claimant's subjective symptoms may have been motivated in whole or in part by secondary gain.
>
> When a medical source uncritically accepts a patient's history, complaints, and subjective symptoms, the reliability of any resulting opinions and conclusions drawn by that medical source must necessarily depend on the reliability of the claimant's self-reports. Such opinions and conclusions, therefore, are subject to heightened scrutiny. I have found in this case (as I state elsewhere in this decision) that the allegations of the claimant are not fully credible. Thus it follows that the treating source opinions and conclusions must be given less weight.
>
> In addition, the treating source opinions are inconsistent with the other medical opinions contained in the record. Specifically, the consultative examiner and the State Agency review physicians all concluded that the claimant's limitations would not preclude the performance of substantial gainful activity. Thus the treating source opinions are not consistent with the other substantial evidence in the record.

(Id. at 25 (footnotes omitted) (citations omitted).)

Despite, the ALJ's conclusions as to what testing Dr. Multani did and did not do, and whether the doctor's findings were consistent with other evidence of record, the ALJ had been put on notice that the medical record was not complete with respect to Plaintiff's treatment by Dr. Multani. As explained in section C below, Dr. Multani did not cooperate with Plaintiff's attempts to secure additional treatment records, and the ALJ denied Plaintiff's request to subpoena those records. Because the Court decides that this action must be

remanded for further development of the record, particularly with respect to Dr. Multani, the Court also directs the ALJ to further consider Dr. Multani's opinions in light of the entire medical record and to set forth legally sufficient reasons for rejecting those opinions, if the ALJ again determines rejection is warranted.[5]

**D. The ALJ Failed to Properly Develop the Record.**

Approximately two months before the scheduled date of Plaintiff's most recent hearing before the ALJ, Plaintiff's counsel requested that the ALJ issue subpoenas for medical records from Arrowhead Regional Medical Center, Edwin Pasuhuk, M.D., and Dr. Multani. (AR at 111-12.) Plaintiff explained in her request that multiple attempts had been made to obtain these medical records, but they had met with resistance from the treating sources. (Id. at 112-14.) In a strongly worded response, the ALJ refused to issue the subpoenas and insisted that Plaintiff's counsel should be able to obtain the medical records without assistance from the ALJ. (Id. at 115-16.) Plaintiff's counsel replied, explaining that they had attempted to retrieve the medical records from the treating sources, but they had been unsuccessful. (Id. at 117-18.) The ALJ again denied the request for subpoenas. (Id. at 119-20.)

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d, 1144, 1150 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). The duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests. Celaya, 332 F.3d at 1183; Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir.1992). "The ALJ may discharge this duty

---

[5] The Court expresses no view on the merits.

[to develop the record] in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150 (citation omitted); see also Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Here, Plaintiff made multiple attempts to obtain medical records from three different treating sources. Two of those sources never responded to Plaintiff's counsel, while one of the sources demanded payment before providing copies of the relevant records. (AR at 112-14.) In light of the resistence from the treating sources, Plaintiff sought a subpoena from the ALJ, providing all of the information required for such a request.[6] Although the ALJ chastised counsel for failing to obtain the records without the assistance of the ALJ, it appears to the Court that Plaintiff had complied with her obligation to seek the records and had been stymied by the treating sources. Surely Plaintiff cannot be held accountable for the failure of Dr. Pasuhuk and Dr. Multani to respond to Plaintiff's request for records. Neither should the demand by the

---

[6] Section I-2-5-78 of the Social Security Administration's Hearings, Appeals, and Litigation Manual (HALLEX) sets forth the procedure for requesting the issuance of a subpoena from the ALJ. Under HALLEX, the claimant must provide: (1) the names and addresses of the witness/documents to be requested; (2) a statement of the important facts that the documents are expected to provide; and (3) the reason why these facts cannot be proven without issuing a subpoena. A subpoena may then issue if: (1) the claimant has shown that an individual has evidence that the claimant cannot obtain without the subpoenas; (2) the ALJ determines that the evidence is reasonably necessary for the full presentation of the case; and (3) the ALJ has exhausted other means of obtaining this evidence. The Court notes, however, that HALLEX does not impose judicially enforceable duties upon the parties, but rather is strictly an internal Agency manual with no legal effect on the Administration or this Court. Clark v. Astrue, 529 F.3d 1211, 1216 (9th Cir. 2008); Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000).

Arrowhead Regional Medical Center that Plaintiff pay for copies of her medical records be held against Plaintiff. As Plaintiff's counsel informed the Arrowhead Regional Medical Center, the California Health and Safety Code entitled Plaintiff or her representative to copies of the record "at no charge." Cal. Health & Safety Code § 123110(d). Although the ALJ recommended that Plaintiff initiate legal action against the medical center for its failure to comply with the California Health & Safety Code, nothing cited by the ALJ or Defendant required Plaintiff to expend the time or the resources to sue her treating source rather than submitting a simple request for a subpoena from the ALJ.

In addition, the ALJ denied the request for subpoenas with a conclusory finding that the records requested were not reasonably necessary for the full presentation of the case. However, the ALJ's ultimate decision denying benefits belies such a finding. With respect to Dr. Multani, the ALJ gave his opinions less weight because the March 9, 2009, checklist-style form included only conclusions regarding functional limitations without any rational for those conclusions and was not supported by any objective evidence, and because Dr. Multani had not conducted a malingering-sensitive memory test. (AR at 25.) However, it would be impossible for the ALJ to make such conclusions without having reviewed Dr. Multani's records in their entirety. As to Plaintiff's treating sources as a whole, the ALJ rejected them for failure to conduct validity testing and consider whether Plaintiff's symptoms were motivated by secondary gain, and because the opinions were inconsistent with the other medical opinions contained in the record. Again, it hardly seems possible for the ALJ to make such sweeping conclusions when he has been put on notice that the medical record was incomplete.

Finally, Defendant argues that there was no error because Plaintiff had "ample time" to obtain her own medical records and the ALJ held the record

open after the hearing to allow Plaintiff to supplement the medical evidence. (JS at 24.) However, allowing Plaintiff more time and holding the record open were empty gestures when the ALJ had been informed that Plaintiff's treating sources were not cooperating with her requests for medical records. Because Plaintiff's treating sources were unwilling to cooperate, additional time would not have made it possible for Plaintiff to obtain the records sought without the assistance of a subpoena.

Under these circumstances, the ALJ erred in failing to put forth any effort to fulfill his duty to fully and fairly develop the record. See Smolen, 80 F.3d at 1288 (ALJ erred in failing develop the record by seeking clarification from the treating sources where the ALJ rejected the treating source opinions because they appeared in the form of "check-the-box" answers and seemed to be assumptions on the part of the treating sources). Upon remand, the ALJ shall assist Plaintiff in her effort to obtain all relevant medical evidence and issue subpoenas for such evidence, if necessary.

**E. This Case Should Be Remanded for Further Administrative Proceedings.**

The law is well established that remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court finds that this is an instance where further administrative

proceedings would serve a useful purpose and remedy administrative defects. Thus, remand for further proceedings is warranted.

**IV.**

**ORDER**

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

DATED: January 28, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge